STATE of North Dakota, Plaintiff and Appellant,

v.

Brian James KONEWKO, Defendant and Appellee.

Cr. Nos. 940280, 940281.

Supreme Court of North Dakota.

March 16, 1995.

Mark R. Boening, Asst. State's Atty., Courthouse, Fargo, for plaintiff and appellant.

Steven D. Mottinger, Fargo, for defendant and appellee.

VANDE WALLE, Chief Justice.

The state appealed from an order of the county court, Cass County, granting a motion to suppress evidence in support of the state's complaints against Brian James Konewko for driving under suspension, N.D.C.C. § 39–06–42, and driving under the influence of alcohol [DUI], N.D.C.C. § 39–08–01. We hold that the judge erred in suppressing the evidence because the investigating officer had grounds for a reasonable, articulable suspicion of unlawful activity prior to any Fourth Amendment seizure. We reverse and remand for trial.

While traveling east on 13th Avenue South in Fargo at approximately 2:00 a.m., May 14, 1994, Patrol Officer Bruce Ray Jorgensen of the Cass County Sheriff's Office noticed a dark-colored vehicle sitting in an open wash bay area at the east end of the Whale Of A Wash carwash. As he watched, the vehicle's headlights were turned off. Two hours earlier, a dark-colored vehicle had been involved in a chase with other officers of the sheriff's department near Page, Tower City, and Finley. Officer Jorgensen testified to the trial court that the chase took place some forty to fifty miles from Fargo. He testified that the vehicle involved in the chase had traveled through a field and he "therefore believed that they may be washing off the vehicle and that's why it was at that Whale Of A Wash."

Officer Jorgensen turned into the west end of the carwash, turned off his lights, and proceeded toward the vehicle. When he pulled in front of the vehicle, he saw someone, later identified as Konewko, sitting behind the steering wheel. The officer then turned on the left alley light on the light bar of his squad car and "shined it into the windshield, into the front side of the vehicle." As he watched for two to three minutes, he noticed that Konewko's "face was dropping down to the floor" and that Konewko kept sliding toward the driver's door.

At this point, Officer Jorgensen turned off the alley light and pulled in behind the vehicle. As he walked to the vehicle, he noted that the car was not running. When he got to the driver's door he noticed that the "oil light or generator light was glowing on the dash." The keys were in the ignition and turned to the on position. The driver's window was down and the door was half-latched. Konewko's left hand was under the seat and out of sight. Officer Jorgensen opened the driver's door. Konewko was breathing heavily and "was sleeping or passed out." Officer Jorgensen shook Konewko's left shoulder in an attempt to awaken him and "identified [him]self and continued shaking him until he did wake up."

According to Officer Jorgensen's testimony, once Konewko awoke, he was asked what he was doing there. Officer Jorgensen stated:

"And as I talked to him I could then detect a strong odor of an alcoholic beverage on his breath or person, his eyes were very, very red and bloodshot and his speech was slurred to the point I couldn't understand him. And at this point I asked him for some identification or a driver's license."

Konewko's performance on field sobriety tests led to his arrest for driving under the influence of alcohol and driving under suspension.

Officer Jorgensen testified that he "assumed" that the carwash was open, that it was a self-service operation open twenty-four hours a day. He also stated that he would

have stopped the vehicle if it had driven away.

In his motion to suppress, Konewko argued that Officer Jorgensen's actions amounted to a Fourth Amendment "stop" and that he had no reasonable, articulable suspicion to make the stop. The trial court agreed that there was a Fourth Amendment "stop" and that the chase of the dark-colored car was "too remote an occurrence to provide Deputy Jorgensen with a reasonable and articulable suspicion which would justify his stop of Konewko's vehicle." The trial court also noted that the vehicle was lawfully parked and that Konewko "committed no violations in the officer's presence." Citing *State v. Sarhegyi*, 492 N.W.2d 284 (N.D. 1992), the trial court granted Konewko's motion to suppress.

■ When reviewing a motion to suppress, we resolve conflicts in testimony in favor of affirmance and defer to the trial court's "superior opportunity to weigh the evidence and to judge the credibility of the witness." *State v. Halfmann*, 518 N.W.2d 729, 730 (N.D.1994).

"A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence.... We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact." *State v. Zimmerman*, 529 N.W.2d 171, 173 (N.D.1995) [citations omitted].

■ In this case, the only testimony before the trial court was Officer Jorgensen's. Questions of law are fully reviewable. *Id.*

■ Just like other citizens, police officers have a right to be in places open to the public. *E.g.*, *State v. Franklin*, 524 N.W.2d 603, 604–05 (N.D.1994) [noting that "it is not a seizure for an officer to walk up to and talk to a person in a public place, including a person in a parked car."]. Officer Jorgensen's subjective reasons for being in the public place are not relevant to our analysis.

In *Sarhegyi, supra,* we affirmed a grant of a motion to suppress evidence acquired by an officer who investigated a passenger vehicle parked among tractors and combines in the lot of a closed farm implement dealership. When the officer entered the dealership, Sarhegyi's "headlights came on and [she] attempted to leave the property." *Sarhegyi, supra,* at 285. The officer stopped her from leaving.

■ Konewko's situation was distinguishable. When Officer Jorgensen pulled his patrol car behind Konewko's and proceeded to open the door and shake him awake, a Fourth Amendment "stop" may have occurred. However, there is no evidence in the record to suggest that up until this time, Konewko was inhibited from leaving. *See Franklin, supra; Sarhegyi, supra.* By the time the "stop" occurred, the officer had observed enough to give him a reasonable and articulable suspicion that Konewko was either in need of help or was in violation of the DUI laws. *See Borowicz v. North Dakota Dep't of Transp.*, 529 N.W.2d 186 (N.D. 1995); *Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329 (N.D.1987).

We hold that the trial court erred in concluding a Fourth Amendment "stop" occurred prior to the time the officer had reasonable and articulable suspicions to make the "stop". We reverse the grant of the suppression motion and remand for trial.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.