STATE of North Dakota, Plaintiff
and Appellant,

v.

Stacy A. OVA, Defendant and Appellee.

Cr. No. 950099.

Supreme Court of North Dakota.

Oct. 31, 1995.

Robert A. Freed, Assistant State's Attorney, Jamestown, for plaintiff and appellant.

Gene W. Doeling, Fargo, for defendant and appellee.

VANDE WALLE, Chief Justice.

The State of North Dakota appealed from an order of the district court, Stutsman County, which granted Stacy A. Ova's motion to suppress evidence in support of the State's complaint charging Ova with driving while under the influence of alcohol in violation of section 39–08–01, NDCC. We reverse.

At approximately 1:25 a.m., on September 11, 1994, while traveling east on paved County Road 42, in Stutsman County, Officer Craig Beedy of the North Dakota Highway Patrol noticed a pickup facing north in a stationary position on a gravel road on the north side of County Road 42. The pickup was 25 to 30 feet north of County Road 42. Beedy spotted the pickup when he was about 75 yards away from the pickup. Beedy watched the pickup as it "began backing rapidly in what [he] would term as exhibition or careless type driving towards the paved road." He determined that the pickup was "accelerating rapidly" in reverse at approximately 20 miles per hour.

Based upon his own driving experience on gravel roads and seeing others travel on gravel roads, Beedy testified that he observed "an unusual amount of dust" illuminated by Ova's headlights and taillights which "engulfed" the pickup. Because it was dark, Beedy was unable to actually see the pickup's tires spinning, but he assumed the pickup was skidding because of the amount of dust which he observed.

Beedy met and passed the pickup as it was just backing from the gravel road onto the pavement of County Road 42 to travel west. Beedy then turned around and stopped the pickup within a short distance. After issuing warnings to Ova for care required under section 39–09–01.1, NDCC,[1] "[d]ue to the careless nature of her driving," and for failure to change her address on her driver's license, Beedy commented to Ova about the dust and how it looked like she was "spitting up the dust there pretty good." Ova responded that her brakes kept sticking, but she did not deny or confirm Beedy's observation. During their conversation, Beedy detected the odor of alcohol and Ova was ultimately charged with driving while under the influence of alcohol.

Because of the time of night, the location where he spotted the pickup, and the manner of driving, Beedy testified that he thought that there was a possibility of drinking activity in the pickup. Although the possibility was a factor in his decision to stop the pickup, Beedy testified that he stopped the vehicle based upon his observations of rapid acceleration and excessive dust which he testified made him suspect "exhibition/careless driving," emphasizing that "it was just the manner that she was driving; the careless manner that brought my attention to her vehicle." Beedy testified that he checked "erratic driving" as his basis for reasonable suspicion to stop the vehicle based upon his observations.

In her motion to suppress evidence, Ova alleged that Beedy lacked reasonable and articulable suspicion to stop Ova's vehicle. After a hearing and in its oral decision in open court, the court suppressed "all evidence based upon [the] illegal stop." The State appealed the order granting suppression of the evidence pursuant to section 29–28–07(5), NDCC. The sole issue on appeal is whether Officer Beedy had a reasonable and articulable suspicion to stop Ova.

■ On review of a trial court's disposition of a motion to suppress, we defer to a trial court's findings of fact and resolve conflicts in testimony in favor of affirmance, recognizing the trial court's superior opportunity to assess credibility and to weigh the evidence. *State v. Konewko*, 529 N.W.2d 861, 863 (N.D.1995); *State v. Halfmann*, 518 N.W.2d 729, 730 (N.D.1994). Although the underlying factual disputes are findings of fact, whether the findings meet a legal standard, in this instance a reasonable and articulable suspicion, is a question of law. *See, e.g., Salter v. North Dakota Dept. of Transp.*, 505 N.W.2d 111, 112 (N.D.1993). Whereas we do not conduct a de novo review of a trial court's findings of fact, questions of law are fully reviewable. *Konewko*, 529 N.W.2d at 863; *State v. Zimmerman*, 529 N.W.2d 171, 173 (N.D.1995).

■ To justify an investigative stop of a moving vehicle, an officer must have a reasonable and articulable suspicion that a mo-

---

1. Beedy testified that a patrol policy did not permit written warnings for exhibition driving under section 39–08–03.1, NDCC, or careless driving under section 39–09–01, NDCC, and that he used his discretion to issue a warning for care required rather than a traffic summons or citation.

torist has violated or is violating the law. *State v. Hornaday*, 477 N.W.2d 245, 246 (N.D.1991); *Geiger v. Backes*, 444 N.W.2d 692, 693 (N.D.1989). Precedent reminds us that the reasonable suspicion legal standard is less stringent than probable cause:

"Probable cause is a much more exacting standard. Unlike the probable cause standard where it is necessary that a prudent person *believe* that the suspect had committed or was committing an offense, a stop of a person or vehicle requires only *suspicion* that a law has been violated or is being violated. However, this suspicion must be 'articulable and reasonable.' The articulable aspect requires that the stop be justified with more than just a vague 'hunch' or other non-objective facts; and the reasonable aspect means that the articulable facts must produce, by reasonable inference, a *reasonable* suspicion of unlawful conduct."

*State v. VandeHoven*, 388 N.W.2d 857, 858 n. 1 (N.D.1986) [citations omitted]; *see McNamara v. North Dakota Dept. of Transp.*, 500 N.W.2d 585, 587 (N.D.1993) [recognizing that reasonable and articulable suspicion is not as stringent as probable cause].

■ We use an objective standard to determine whether an investigative stop is valid and look to the totality of the circumstances. *Geiger*, 444 N.W.2d at 693. "The question is whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity." *Hornaday*, 477 N.W.2d at 246. The officer is not required to isolate single factors which signal a potential violation of the law; "[r]ather, officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." *Geiger*, 444 N.W.2d at 693.

■ To investigate a reasonable and articulable suspicion, a police officer need not wait for an actual violation of the law for an investigative stop to be valid. *State v. Nelson*, 488 N.W.2d 600, 602 (N.D.1992). Validity does not depend upon whether an officer's

grounds for the stop ultimately results in a conviction. *State v. Smith*, 452 N.W.2d 86, 88 (N.D.1990).

Utilizing these principles in this instance, we conclude the trial court did not apply the appropriate legal standard, despite its recitation of the standard. Although an actual violation is not required for an officer to have reasonable and articulable suspicion to make an investigative stop, the trial court in its analysis required proof of a violation of the exhibition driving statute:

"[A rapid backing and an unusual amount of dust] ... are the articulable facts that [Beedy] is asserting and the statute that ... is being violated is the exhibition driving statute. However, there is no evidence that he heard the tires spinning. There is no evidence that he saw the tires spinning. There is no evidence that he saw evidence of tires spinning, such as gravel flying, gravel hitting his car, gravel hitting her car, loose gravel flying in through the air as a result of spinning tires, and there is no evidence that while he drove past the spot, that he saw tracks in the gravel as a result of spinning tires. What he does base his suspicion upon is the unusual amount of dust. His testimony was that from a slow rate of speed to a higher rate of acceleration as he saw it, there had to be spinning of the tires that occurred. That's his conclusion based upon his observation. We will get back to that in a minute. But his first fact of rapid backing, I mean that—so what I guess. There was rapid backing. He doesn't assert that it was unsafe. He doesn't really assert that it was inappropriate other than it was inappropriate to the exhibition driving statute. So we come back to the exhibition driving statute ... which doesn't help a lot except that it does define exhibition driving as unnecessary engine noise, tire squeal, skid, or slide upon acceleration or braking; or driving or executing or attempting one of a series of unnecessarily abrupt turns. He doesn't allege abrupt turns, although it would seem that if there was some tire spinning on this turn or backing in order to get onto the blacktop, it would've been necessary, but he doesn't

say that. So we're just—we're just back to this unusual amount of dust at night. He submitted no testimony as to the type of gravel that was there, the amount [of dust] that that type of gravel generates ... or to the moisture content or when the last time it rained or when the last time it hadn't rained...."

Consistent with its quest for proof of an actual violation, the trial court reasoned that the officer "probably stopped the car a little too quickly" and that the officer should have followed Ova because Ova's actions "in conjunction with some other driving actions might have been appropriate enough to find articulable facts...." Perhaps Beedy's further observation would have established more evidence for the DUI offense, but such further observation would have been irrelevant as to the suspected traffic violation. *See, e.g., VandeHoven*, 388 N.W.2d at 859 [stating that "subsequent actions which do not enhance the suspicion are irrelevant to a reasonably prompt stop of a vehicle"].

Notwithstanding the flawed analysis, the judge's comments indicate that he found the officer's testimony credible: the officer saw what the officer characterized to be "rapid backing" and an unusual amount of dust. Although Beedy was able to articulate to the court his reasons for stopping Ova, Beedy's bases for the stop must also be reasonable. When assessing reasonableness, courts are to consider the officer's inferences and deductions based upon the officer's training and experience which may elude laypersons. *Hornaday*, 477 N.W.2d at 246–47 [officer reasonably relied on her experience to determine that drinking was taking place in a vehicle parked at a shopping center parking lot]; *State v. Beyer*, 441 N.W.2d 919, 922 (N.D.1989) [officer used his hearing to determine that a vehicle was making "excessive or unusual noise"]; *State v. Thordarson*, 440 N.W.2d 510, 512 (N.D.1989) [officer used his senses to determine that a vehicle was speeding]. In this instance, the trial court did not give the officer the benefit of the inferences which the officer was entitled to draw from his training and experience.

■ Officer Beedy explained to the trial court that at about 1:25 a.m., he saw the pickup rapidly accelerating in reverse and creating an unusual amount of dust on a gravel road. The officer inferred from his observations that the dust was caused by the acceleration or spinning tires; the officer thereby suspected a traffic violation. We cannot say that the officer's inference was unreasonable. The circumstances in this instance, viewed as a whole, were sufficient to give rise to a reasonable and articulable suspicion of a potential violation of the law. We reverse the order which granted suppression of the evidence and remand for further proceedings.

MESCHKE, J., concurs in the result.

VANDE WALLE, C.J., and SANDSTROM and NEUMANN, JJ., concur.

NEUMANN, Justice, concurring.

I agree with the majority opinion, which I have signed. I write separately to clarify a troublesome mischaracterization of the majority opinion in Justice Levine's dissent.

Despite my colleague's statement in her dissent, the majority opinion most emphatically does not state that "findings on the existence of reasonable and articulable suspicion ... are subject to full review by this court." I would not sign an opinion which said that. The majority opinion very clearly and explicitly says we defer to the trial court's factual findings, and resolve evidentiary conflicts in favor of affirmance. It is only the legal standard applied by the trial court which is subject to full review.

In this case the trial court applied the standard of probable cause, rather than reasonable and articulable suspicion, in reviewing the propriety of the officer's stop. Probable cause is not the correct legal standard by which to judge the legality of an investigative stop which falls short of an arrest. The trial court's error was therefore one of law, fully reviewable by this court.

LEVINE, Justice, dissenting.

This case presents a problem because the only finding the trial court explicitly made was "the officer did not have articulable facts leading to a reasonable suspicion that a stat-

ute was being violated." The majority states that findings on the existence of reasonable and articulable suspicion involve questions of law, and are subject to full review by this court. It has therefore put the trial court's finding on reasonable suspicion under a microscope. Yet, the factfinder cannot make a decision on the existence of reasonable suspicion in a vacuum; it must evaluate the facts of the case before making its legal conclusion. *See Salter v. N.D. Dept. of Transp.,* 505 N.W.2d 111 (N.D.1993); *United States v. Campbell,* 843 F.2d 1089 (8th Cir.1988).

Clearly, the trial court evaluated the facts here; it is not clear, however, what the trial court found the facts to be. Under Rule 12(e), NDRCrimP, "[i]f factual issues are involved in determining a motion, the court shall state its essential findings on the record." We have not previously addressed the issue of what steps should be taken if a trial court fails to make factual findings as required under Rule 12(e). Our Rule 12(e) is almost identical to Rule 12(e), FRCrimP. Two federal circuits, interpreting Federal Rule 12(e) strictly, order remands when trial courts fail to make factual findings when determining pretrial motions. *United States v. Moore,* 936 F.2d 287 (6th Cir.1991); *United States v. Prieto–Villa,* 910 F.2d 601 (9th Cir.1990). I believe the better view, and one consistent with our approach in civil cases, *see, e.g., Lentz v. Lentz,* 353 N.W.2d 742 (N.D.1984), is the view that a remand is not always necessary when trial courts fail to make factual findings as required by Rule 12(e), FRCrimP. *United States v. Bloomfield,* 40 F.3d 910 (8th Cir.1994); *United States v. Griffin,* 7 F.3d 1512 (10th Cir.1993); *United States v. Harley,* 990 F.2d 1340 (D.C.Cir.1993); *United States v. Yeagin,* 927 F.2d 798 (5th Cir.1991). These courts will decline a remand if "any reasonable view of the evidence" supports the trial court's decision on a motion to suppress. *Bloomfield,* 40 F.3d at 913–14. In United States v. Williams, 951 F.2d 1287 (D.C.Cir.1991), the court explained that refusal to remand is justified when "any reasonable view of the evidence" supports the trial court's decision because the trial court, "in reaching its legal conclusion, presumably made whatever factual findings were needed to support the con-

clusion." *Id.* at 1291. When remand is denied, the reviewing court therefore "review[s] facts we infer were actually, albeit silently, found." *Id.*

The trial court's legal conclusion here was that the trooper did not have articulable and reasonable suspicion to stop the defendant. On review of the record before us, a reasonable view of the evidence supports this finding. There are indications, which the trial court noted, that the trooper acted because he "had a suspicion and a hunch that something was going wrong." It is well established that "reasonable and articulable suspicion" must be founded on objective facts. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Mere subjective feelings, *i.e.,* hunches, do not provide a rational basis for reasonable suspicion. *See Nicacio v. I.N.S.,* 797 F.2d 700 (9th Cir.1985). In addition, there were inconsistencies between the trooper's testimony before the trial court and his prior testimony before an administrative tribunal where the trooper admitted that he had a hunch, based on the time and location, that the people in the truck might be drinking. Finally, the events upon which the trooper said he based his decision to stop occurred within only a few seconds. Considering the result reached by the trial court, it is reasonable to infer from the record that the trial court implicitly found that the trooper acted on a bare hunch that the people in the truck were drinking and that it also found the trooper's testimony that he stopped the truck for other reasons not to be credible. Under the "any reasonable view of the evidence" rule, it would be appropriate to affirm the trial court's order.

The majority does not deal with the trial court's failure to make explicit factual findings. Instead, the majority concludes that the trial court found the trooper's testimony to be credible. Based on this conclusion, the majority treats the trooper's testimony as if it were a factual finding of the court. This is problematic because the record suggests that the trial court found the trooper's testimony to be incredible. The trial court, in general,

questioned the trooper's testimony, characterizing it as being full of holes.

Questions involving witness credibility are in the realm of the trial court, and we defer to the trial court on such questions. *E.g., State v. Konewko*, 529 N.W.2d 861 (N.D. 1995); *see also State v. Nelson*, 488 N.W.2d 600 (N.D.1992) (Levine, J., dissenting). A finding of incredibility need not be articulated, but can often be inferred from the trial court's decision. *Becker v. Becker*, 262 N.W.2d 478 (N.D.1978). In cases like this one, where we can gather from the result that the trial court discounted a witness's testimony, we should not rely on the same discredited testimony in making our decision.

Moreover, the majority does not merely disregard the trial court's implicit finding on the trooper's credibility, it criticizes the trial court for questioning the trooper's credibility. The majority states that the trial court "did not give the officer the benefit of the inferences" which he was "entitled" to draw. Yet, the trial court clearly was not persuaded that the trooper's actions were based on reasonable inferences; it indicated that the trooper acted on a bare hunch.

The majority states that the trial court erred because it "did not apply the appropriate legal standard." The majority's analysis, however, does not focus on the legal standard at issue but instead on why the trial court should have interpreted the facts differently. The trial court looked at the facts and decided the officer did not have reasonable suspicion to stop the car. The majority looks at the same facts and decides the opposite. There is an obvious disagreement, but it is a disagreement based on different interpretations of the evidence, not on a right and wrong view of the law. It is the trial court's prerogative to find the facts, and it implicitly found that the facts did not support a finding of reasonable and articulable suspicion to stop the defendant's car.

Because a reasonable view of the evidence supports the trial court's decision, I would affirm the trial court's order.