2008 ND 155

**CITY OF DEVILS LAKE, Plaintiff and Appellant**

v.

**David GROVE, Defendant and Appellee.**

**No. 20070292.**

Supreme Court of North Dakota.

Aug. 28, 2008.

---

1. Although Poitra raised jurisdictional issues in the district court, they were not raised on appeal to this Court.

Daniel M. Traynor (appeared) and Michael P. Hurly (argued), Devils Lake, N.D., for plaintiff and appellant.

Jay D. Knudson (argued), Reichert Armstrong Law Office, Grand Forks, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] The City of Devils Lake appeals a district court order granting David Grove's motion to suppress evidence. Grove moved to suppress the results of sobriety tests conducted after law enforcement officers transported him from the scene of a traffic stop to the Lake Region Law Enforcement Center. We hold that, under the totality of the circumstances, the officer's transport of Grove away from the scene of the traffic stop constituted a de facto arrest because it was not constitutionally justified by the officers' reasonable and articulable suspicion that Grove had been driving under the influence. There is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision to grant Grove's motion to suppress is not contrary to the manifest weight of the evidence. We, therefore, affirm the district court order granting Grove's motion to suppress.

## I

[¶ 2] A law enforcement officer stopped Grove in February for operating a vehicle without taillights. The record reveals that, during the stop, Grove stepped out of his vehicle. The officer smelled alcohol on Grove's breath when talking to Grove, who walked to the rear of the vehicle to check his taillights. The officer continued talking to Grove while examining his license and insurance card.

[¶ 3] After smelling alcohol on Grove's breath and conversing with Grove, the officer asked Grove to submit to field sobriety tests. Grove agreed, and the officer demonstrated the one leg stand test. The officer and Grove discussed how cold it was at the scene. The officer suggested Grove sit in the officer's heated police car. The district court found that Grove "welcomed" this invitation. No field sobriety tests were performed outdoors at the scene of the stop, nor were any performed inside the police car.

[¶ 4] A senior officer arrived at the scene. The officers decided to move the field test site to the Lake Region Law Enforcement Center. The officers told Grove he was not under arrest but was detained for the purpose of conducting field sobriety tests. The officers searched Grove before putting him in the backseat of a police car. The officers transported Grove several blocks to the Law Enforcement Center. Grove was not permitted to move his vehicle at the scene of the stop before being transported. An officer moved it off the roadway. Grove failed sobriety testing at the Law Enforcement Center and was charged with driving under the influence.

[¶ 5] Before trial, Grove moved to suppress the test results obtained at the Law Enforcement Center. Following a hearing, the district court granted Grove's motion to suppress and dismissed the complaint against Grove. It found that the officers could have established probable cause for Grove's arrest by completing several field sobriety tests from inside the police car while at the scene of the traffic stop. Although there was no indication Grove objected to moving the test site to the Law Enforcement Center, the district court held Grove had no choice regarding the location where the testing would occur. The district court concluded, "a reasonable person in Grove's situation would have believed he was under arrest when removed from the stop scene and transported to the [Law Enforcement Center] by police in the back of the patrol car." Thus, the district court granted Grove's motion to suppress, concluding the officers unlawfully arrested Grove because they failed to establish probable cause before making the arrest.

[¶ 6] The City appeals the district court's suppression of Grove's test results, arguing the district court erred in its conclusion that Grove was arrested without probable cause.

## II

[¶ 7] In reviewing a district court's decision on a motion to suppress evidence, this Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. *State v. Washington*, 2007 ND 138, ¶ 9, 737 N.W.2d 382. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. *Id.* "Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law." *Id.*

## III

[¶ 8] The Fourth Amendment, which applies to the states through the

Fourteenth Amendment, prohibits unreasonable searches and seizures. *Dunaway v. New York*, 442 U.S. 200, 207, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). "To realize this protection of individual rights, all evidence obtained by unreasonable searches and seizures is inadmissible against the defendant at trial." *State v. Linghor*, 2004 ND 224, ¶ 4, 690 N.W.2d 201. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (citation omitted). In determining the reasonableness of a search or seizure, the public interest must be balanced with an "individual's right to personal security free from arbitrary interference by police officers." *State v. Gay*, 2008 ND 84, ¶ 14, 748 N.W.2d 408.

[¶ 9] Under the Fourth Amendment, a seizure occurs "whenever an officer stops an individual and restrains his freedom." *Id.* A "person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *State v. Fields*, 2003 ND 81, ¶ 11, 662 N.W.2d 242.

[¶ 10] An arrest is a seizure under the Fourth Amendment. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. An arrest occurs when circumstances exist that would cause a reasonable person to conclude he was under arrest and not free to leave. *State v. Anderson*, 2006 ND 44, ¶ 22, 710 N.W.2d 392. The existence of an arrest is a question of law. *Id.* at ¶ 23. "An arrest is made by an actual restraint of the person of the defendant or by defendant's submission to the custody of the person making the arrest." N.D.C.C. § 29–06–09. "[F]ormal words of arrest are not a condition precedent to the existence of an arrest." *State v. Anderson*, 336 N.W.2d 634, 639 (N.D.1983). An "officer's subjective intent or outward statements do not necessarily control whether, or when, a party is under arrest." *Linghor*, 2004 ND 224, ¶ 14, 690 N.W.2d 201.

[¶ 11] An arrest must be supported by probable cause. *Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. "Probable cause to arrest exists when the facts and circumstances within police officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed." *Hoover v. Director, North Dakota Dept. of Transp.*, 2008 ND 87, ¶ 9, 748 N.W.2d 730. To "determine whether an officer had probable cause to arrest an individual, [this Court examines] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Washington*, 2007 ND 138, ¶ 12, 737 N.W.2d 382 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)). "Probable cause to arrest a driver for driving under the influence exists if the police officer (1) observes some signs of physical or mental impairment, and (2) has reason to believe the driver's impairment is caused by alcohol." *Sayler v. North Dakota Dept. of Transp.*, 2007 ND 165, ¶ 19, 740 N.W.2d 94. Detection of the odor of alcohol, observation of signs of impairment, and failure of field sobriety tests are relevant factors in determining probable cause to arrest a driver for driving under the influence of alcohol. *See Kahl v. Director, North Dakota Dept. of Transp.*, 1997 ND 147, ¶ 17, 567 N.W.2d 197.

[¶ 12] Another type of Fourth Amendment seizure is an investigative stop of an automobile. *See City of Grand Forks v. Mitchell,* 2008 ND 5, ¶ 7, 743 N.W.2d 800. "When conducting a traffic stop, an officer can temporarily detain the traffic violator at the scene of the violation." *Fields,* 2003 ND 81, ¶ 8, 662 N.W.2d 242. An investigative stop must be supported by an officer's reasonable and articulable suspicion. *Mitchell,* at ¶ 7. "The reasonable suspicion standard is less stringent than probable cause" and requires more than a "mere hunch." *State v. Corum,* 2003 ND 89, ¶ 10, 663 N.W.2d 151.

[¶ 13] The constitutionality of an investigative detention is judged under the framework established in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which requires "that an investigative detention be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Fields,* 2003 ND 81, ¶ 8, 662 N.W.2d 242. In *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (citation omitted), the Supreme Court explained,

> The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

[¶ 14] An investigative detention may continue as long as reasonably necessary to conduct duties resulting from a traffic stop and to issue a warning or citation. *Fields,* 2003 ND 81, ¶ 8, 662 N.W.2d 242. Those duties may include:

> [R]equesting the driver's license and registration, requesting that the driver step out of the vehicle, requesting that the driver wait in the patrol car, conducting computer inquiries to determine the validity of the license and registration, conducting computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and making inquiries as to the motorist's destination and purpose.

*Id.* (quoting *United States v. Jones,* 269 F.3d 919, 924 (8th Cir.2001)).

[¶ 15] If an investigative detention lasts too long or its manner of execution unreasonably infringes an individual's Fourth Amendment interests, it may no longer be justified as an investigative stop and, as a full-fledged seizure, must be supported by probable cause. *See United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *State v. Ressler,* 2005 ND 140, ¶ 19, 701 N.W.2d 915. To determine whether an investigative detention has become a de facto arrest, this Court considers whether the invasion of an individual's Fourth Amendment interests is so minimally intrusive as to be justifiable on reasonable suspicion. *State v. Heitzmann,* 2001 ND 136, ¶ 18, 632 N.W.2d 1. This Court also considers the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes. *Id.* There is no bright line rule for

determining when a seizure becomes a de facto arrest. *Id.*

## IV

[¶ 16] The City argues the district court erred by granting Grove's motion to suppress. The City does not argue the officers had probable cause to arrest Grove for driving under the influence. The City asserts the initial traffic stop was valid and did not become a de facto arrest when Grove was transported to the Law Enforcement Center for sobriety tests. The City argues the officers' investigative detention of Grove, including the transport of Grove to the Law Enforcement Center, was justifiable on reasonable suspicion.

[¶ 17] Grove argues the district court properly granted his motion to suppress. He does not dispute the validity of the initial traffic stop. He does, however, assert that the officers violated his Fourth Amendment interests by transporting him to the Law Enforcement Center before establishing probable cause to arrest him for driving under the influence.

[¶ 18] We conclude the officers' transportation of Grove from the site of the traffic stop to the Law Enforcement Center could not be supported on reasonable suspicion alone and constituted a de facto arrest. The City concedes the officers lacked probable cause to arrest Grove. The arrest, therefore, violated Grove's Fourth Amendment interests. Thus, we hold the district court properly granted Grove's motion to suppress.

[¶ 19] The City argues the district court erred because it considered what the officers should have done in lieu of transporting Grove to the Law Enforcement Center, rather than considering whether a reasonable person would have concluded he was under arrest. We disagree. First, the availability of less intrusive means reasonably available to verify or dispel the officer's suspicion that Grove was driving under the influence is relevant to the court's consideration of whether the transportation of Grove from the site of the traffic stop to the Law Enforcement Center constituted a de facto arrest. *See Royer*, 460 U.S. at 500, 103 S.Ct. 1319. Second, the district court did consider whether a reasonable person in Grove's situation would have concluded he was under arrest.

[¶ 20] The officer who stopped Grove was obliged to limit the investigative methods employed during the stop to "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *See id.* "The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Sharpe*, 470 U.S. at 687, 105 S.Ct. 1568. "In assessing whether a detention is too long in duration to be justified as an investigative stop," it is "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Id.* at 686, 105 S.Ct. 1568. "A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.* "The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, itself, render the search unreasonable." *Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

[¶ 21] The United States Supreme Court has "emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those pur-

poses," and that "common sense and ordinary human experience must govern" the determination of whether an investigative stop has become a de facto arrest. *Sharpe*, 470 U.S. at 685, 105 S.Ct. 1568.

[¶ 22] The district court explained its rationale for granting Grove's motion to suppress:

Defendant did not formally object to the movement of the test site but he was never directly asked about it. He merely went along with it. The officers unilaterally decided on moving the site of the field tests and then they informed the Defendant. He never had a choice so it is unrealistic to believe that he thought he could object. He was not free to go and restrained within the backseat of the police car where there is no ability to get out. No handcuffs were used but a defendant would not clearly understand this distinction under these circumstances. He was not free to operate his vehicle nor leave the scene of the stop. A review of the video, which illuminates the officers' decision to move to the [Law Enforcement Center] for testing, leaves this Court with a clear objective impression that a reasonable person would conclude that he was under arrest and not free to leave, despite the contrary words of the officers.

After a review of the facts and circumstances as shown on the video and consideration of the statements made between the officers and driver, this Court concludes that a reasonable person in Grove's situation would have believed he was under arrest when removed from the stop scene and transported to the [Law Enforcement Center] by police in the back of the patrol car. As a matter of law, the Court concludes that the Defendant had been arrested when he left the scene of the traffic stop.

In its order, the district court also noted that the "officer while inside his vehicle could have completed the horizontal gaze nystagmus test (HGN), alphabet recitation test as well as an onsite screening test (SD–2), all of which may have established probable cause to arrest the driver for a DUI offense at the scene" of the stop.

[¶ 23] The record reveals that the officer could have used less intrusive methods of verifying or dispelling his suspicion that Grove was driving under the influence. The officer was unreasonable in failing to pursue alternative sobriety tests commonly conducted within patrol vehicles. Although it was cold outside, the officer would have been able to conduct sobriety testing sufficient to verify or dispel his suspicion regarding whether Grove was driving under the influence from within the patrol car at the scene of the traffic stop. Under the totality of the circumstances, it was unreasonable for the officers to transport Grove to the Law Enforcement Center without first conducting tests at the scene of the stop that may have provided probable cause.

[¶ 24] The City further maintains a reasonable person in Grove's situation would not conclude he was under arrest under the totality of the circumstances. The City contends a reasonable person seated in a police vehicle would not know they are unable to open the car's doors. Moreover, the City asserts Grove's failure to hesitate when asked to sit in the police car shows he was not under arrest. In particular, the City asserts the district court should have given greater attention to the cold temperatures during the investigative detention, Grove's inadequate attire for the outdoor temperatures, and the short distance between the scene of the stop and the Law Enforcement Center. To support its contention that the district court failed to properly consider the totali-

ty of the circumstances, the City points to our previous consideration of weather conditions in Fourth Amendment analysis. *See State v. Mertz,* 362 N.W.2d 410, 413 (N.D.1985); *State v. Martin,* 543 N.W.2d 224 (N.D.1996). Grove's case is, however, distinguishable from both *Mertz* and *Martin.*

[¶ 25] In *Mertz,* 362 N.W.2d at 411, an officer stopped Lonny Mertz for a speeding violation. After addressing Mertz through his vehicle's window, the officer ordered Mertz to sit in the patrol car. *Id.* The officer observed Mertz appeared to be intoxicated and administered field sobriety tests to Mertz. *Id.* After Mertz failed the tests, the officer placed him under arrest and transported him to the Dickinson Law Enforcement Center. *Id.* at 411–12. The issue in *Mertz* was whether an officer effected a custodial arrest without probable cause by ordering an individual into a patrol car during a traffic stop. *See id.* at 412. We acknowledged the "additional increment of intrusion into a driver's personal liberty when he is ordered into a patrol car," but concluded that this increased intrusion "does not outweigh public-policy concerns for the safety of police officers." *See id.* at 413. Thus, we held it was constitutionally permissible for the officer to order Mertz into a patrol car during the investigative stop. *Id.*

[¶ 26] In *Martin,* 543 N.W.2d at 225, an officer responded to an automobile accident during a winter storm. Upon arriving at the scene, the officer found Martin in one of the vehicles. *Id.* Martin agreed to enter the officer's patrol car, where the officer asked for Martin's license. *Id.* The officer found that Martin's license was suspended and arrested him for driving under suspension. *Id.* While they were in the patrol car, the officer noticed Martin exhibited signs of intoxication. *Id.* The officer transported Martin to the Grand Forks

Correctional Center to perform field sobriety tests. *Id.* Martin was then arrested for driving under the influence. *Id.* at 225–26. The officer never advised Martin of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Martin,* 543 N.W.2d at 226. The issue in *Martin* was whether an officer's pre-arrest questioning of Martin in the patrol car constituted a "custodial interrogation" requiring the officer to advise Martin of his *Miranda* rights. *Id.* We held that the officer reasonably chose to conduct the accident investigation in his patrol car because severe winter weather was occurring when the officer responded to the accident and it would have been unreasonable, and potentially dangerous, for the officer to have asked Martin to stand outside during the storm while answering questions about the accident. *Id.* at 227.

[¶ 27] This case is distinguishable from *Mertz* because Mertz was not transported away from the site of the investigative stop. The increment of intrusion into a driver's personal liberty when he is ordered into a patrol car is a far lesser intrusion than the intrusion into a driver's personal liberty when he is transported away from the site of a traffic stop. This case is also distinguishable from *Martin.* Although the defendant in *Martin* was, like Grove, transported away from the scene of a traffic stop to perform field sobriety tests at a law enforcement center, Martin did not argue that the officer's transport of Martin to the Correctional Center constituted a de facto arrest unsupported by probable cause.

[¶ 28] The transportation of Grove from the scene of the traffic stop to the law enforcement center was not so minimally intrusive as to be justifiable on reasonable suspicion alone. In *Ressler,* 2005 ND 140, ¶ 19, 701 N.W.2d 915, we held that reasonable suspicion was an inade-

quate basis for the transportation by law enforcement of a package from the place where suspicion arose to a wholly different venue. We now similarly hold that, under the totality of the circumstances in this case, reasonable suspicion was an inadequate basis for the transportation by law enforcement of Grove from the scene of the traffic stop to the Law Enforcement Center. The transportation of Grove required, but was not supported by, probable cause. The results of the sobriety tests conducted at the Law Enforcement Center were, therefore, obtained in violation of Grove's Fourth Amendment interests and were properly suppressed by the district court.

## V

[¶ 29] Under the totality of the circumstances, a reasonable person in Grove's situation would have concluded he was under arrest. We conclude the transportation of Grove from the scene of the traffic stop to the Law Enforcement Center constituted a de facto arrest. Grove's arrest was not supported by probable cause. There is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision to grant Grove's motion to suppress is not contrary to the manifest weight of the evidence. We, therefore, affirm the district court order granting Grove's motion to suppress.

[¶ 30] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.