**STATE of North Dakota, Plaintiff and Appellant,**

v.

**James Daniel KISSE, Defendant and Appellee.**

**Crim. No. 983.**

Supreme Court of North Dakota.

June 28, 1984.

Tom M. Henning, Asst. State's Atty., Dickinson, for plaintiff and appellant State of N.D.

Ronald A. Reichert, of Freed, Dynes, Reichert & Buresh, Dickinson, for defendant and appellee.

VANDE WALLE, Justice.

The State appealed from an order of the county court, Stark County, suppressing the results of a Breathalyzer test given to James Kisse, who was charged with driving while under the influence of intoxicating liquor. We dismiss the appeal.

On August 27, 1983, at about 1:15 a.m., Kisse was driving in the eastbound lane of a highway. Officer Eldred Frederikson of the Dunn County sheriff's office, who was traveling in the westbound lane, observed that Kisse went on the right shoulder of the road upon meeting Officer Frederikson's car. Officer Frederikson then turned around and followed Kisse. He noticed that Kisse drove his car on the shoulder of the road and over the centerline. Officer Frederikson signaled Kisse to stop, and after Kisse did so, the officer administered field sobriety tests. He observed that Kisse had glassy eyes and smelled of alcohol. After the tests were completed, the officer placed Kisse under arrest for driving while under the influence of intoxicating liquor and read Kisse his *Miranda* rights. Kisse agreed to take a Breathalyzer test, and Officer Frederikson drove him to Dickinson.

According to Kisse, before he took the test he told Officer Frederikson that he wanted to call a lawyer. Officer Frederikson responded to Kisse's request by stating that a lawyer would be angry about being called so early in the morning and that a lawyer would not be helpful. Kisse also asked for a blood-alcohol test. Officer Riesinger, who administered the Breathalyzer test, told Kisse that a second test was unnecessary because it would indicate the same blood-alcohol content. A jailer also told Kisse that he should plead guilty and that Kisse would be wasting his money if he hired a lawyer. Officer Frederikson in an affidavit denied that he or any other officers told Kisse not to hire an attorney and not to have a blood-alcohol test.

Without clearly specifying the rationale for its decision, the county court granted Kisse's motion to suppress the results of the Breathalyzer test. On appeal the State, in interpreting the county court's decision, argues that the county court erred in determining that there is a right to the assistance of counsel prior to the administration of a Breathalyzer test. Kisse contends that the appeal should be dismissed. Because we believe that the appeal should be dismissed, we will not address the merits of this case.

Kisse argues that under Section 29–28–07(5), N.D.C.C., the State has no right to appeal because the prosecuting attorney's statement filed with the notice of appeal merely paraphrases the statutory language and because without the results of the Breathalyzer test there still is sufficient evidence to support a conviction of driving while under the influence of intoxicating liquor.

Section 29–28–07(5) requires the prosecuting attorney to file a statement asserting that the suppression order has rendered the evidence in the case insufficient as a matter of law or has effectively destroyed any possibility of prosecuting the defendant. In *State v. Dilger*, 322 N.W.2d 461 (N.D.1982), we interpreted Section 29–28–07(5) and stated that the prosecuting attorney must explain how the suppression order has rendered evidence insufficient as a matter of law or how it has effectively destroyed any possibility of prosecuting the criminal charge to a conviction. We stated, "The prosecuting attorney's explanation should be included either with the statement filed pursuant to § 29–28–07(5), N.D.C.C., or in the State's brief filed for the purposes of an appeal." 322 N.W.2d at 463. In *State v. Frank*, 350 N.W.2d 596 (N.D.1984), we recognized that the statement in which the prosecuting attorney explains the reasons for the appeal must do more than restate the grounds for appeal

as provided in Section 29–28–07(5). The prosecuting attorney thus may comply with Section 29–28–07(5) either by filing a statement that explains the reasons for the appeal or by filing a terse statement and providing the explanation in a brief. Both procedures satisfy the requirements of Section 29–28–07(5) and fulfill the statutory objective, which is to compel prosecuting attorneys to evaluate carefully the actual effect of the suppression order. In the present case the prosecuting attorney complied with Section 29–28–07(5) by filing a statement that paraphrased the language of the statute and by explaining in his brief the reasons for his appeal. The prosecuting attorney explained that he needed the Breathalyzer test as a basis for expert testimony, which would rebut Kisse's probable claim of limited consumption of alcohol, and as scientific evidence of intoxication, which would be required by the jury in order to convict. In addition, the prosecuting attorney stated that Officer Riesinger could not remember how Kisse appeared and acted during the Breathalyzer test.

Kisse also contends that the appeal should be dismissed because the State, even without the Breathalyzer test results, has sufficient evidence to support a conviction. At oral argument the prosecuting attorney stated, however, that in his county juries will not convict a person of driving while under the influence of intoxicating liquor unless they have objective, scientific evidence establishing intoxication. The attorney also emphasized that defense attorneys are able to convince juries that other events, not the consumption of alcohol, caused the apparent signs of intoxication.

■ The standard of review in appeals from suppression orders must reconcile two important interests: the prosecuting attorney's discretion in evaluating the actual effect of the suppression order and the Legislature's decision to grant only a limited right of appeal from suppression orders. See *State v. Dilger, supra*; Section 29–28–07(5). In *State v. Dilger*, 322 N.W.2d at 463, we recognized that, although we are reluctant to dismiss the State's appeal "un-

less the prosecution's determination of the need for the suppressed evidence is clearly inconsistent with the record or is without foundation in reason or logic," Section 29–28–07(5) does not confer an automatic right to appeal. In construing this statute we observe that the Legislature adopted the language of a Minnesota statute, Section 632.12. The interpretation of the adopted statute by Minnesota courts is presumed to have been accepted by the North Dakota Legislature at the time of enactment, July 1977. See *State v. Dilger, supra; Bartels v. City of Williston*, 276 N.W.2d 113 (N.D. 1979). Since the North Dakota Legislature's enactment of Section 29–28–07(5), the Minnesota statute has been superseded. See Rules 28.04, 29.02, 29.03, Minn.R. Crim.P. Subsequent Minnesota decisions have interpreted the recently adopted rules as providing for the same standard of review as did the earlier Minnesota statute, which the North Dakota Legislature adopted.

■ In *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977), the Minnesota Supreme Court stated:

"[T]his court will only reverse the determination of the trial court if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial."

Later Minnesota decisions have confirmed that the standard of review is that the trial court's error will have a critical impact on the outcome of the trial. See, e.g., *State v. Schmieg*, 344 N.W.2d 425 (Minn.App.1984); *State v. Fisher*, 304 N.W.2d 33 (Minn.1981). This court, however, is not bound by the decisions of the Minnesota Supreme Court which were rendered after the North Dakota Legislature enacted Section 29–28–07(5). See 2A C. Sands, *Statutes and Statutory Construction* ¶ 52.02 (4th ed. 1973) ["When the courts of the foreign state construe the statute after it has been adopted, the decisions so made are never of more than persuasive weight and usually are considered as of no more weight than cases construing

similar statutes from other jurisdictions."] A fundamental purpose of the adopted statute is not to be subverted by an otherwise applicable decision of the foreign State. See 2A C. Sands, *Statutes and Statutory Construction, supra.*

■ Minnesota's "critical-impact" test for determining if a suppression order is applicable recognizes the prosecutor's unique role in evaluating the evidence remaining after the granting of a motion to suppress. The critical-impact test, however, fails to promote the Legislature's decision to limit appeals. As we stated in *State v. Frank, supra,* 350 N.W.2d at 598, an "order granting the motion to suppress evidence is like a final order, i.e., the suppression order, according to the State in its statement, *determines* the outcome of the prosecution." [Emphasis supplied.] The critical-impact test provides only that the suppressed evidence is critical to, but not dispositive of, the outcome of the trial. In reviewing the suppression order we therefore evaluate the circumstances of each case to decide whether or not the absence of the suppressed evidence will most likely determine the outcome of the trial.

■ Kisse was charged with violating Section 39–08–01, which, in part, prohibits a person from driving while under the influence of intoxicating liquor or while having a blood-alcohol concentration of at least .10 percent. The suppression of the Breathalyzer test results does determine the outcome of the prosecution for driving with a blood-alcohol concentration of at least .10 percent; the suppression order, however, does not necessarily determine the outcome of finding Kisse guilty of driving while intoxicated.

■ To establish that a person was driving while under the influence of intoxicating liquor, the prosecution must prove that the defendant was driving a motor vehicle on a public way and that the driver lacked "the clearness of intellect and control of himself that he would otherwise have, ..." *State v. Hanson,* 73 N.W.2d 135 (N.D.1955). See *State v. Halvorson,* 340 N.W.2d 176 (N.D.1983); *State v. Salhus,*

220 N.W.2d 852 (N.D.1974). In order to be convicted of driving while under the influence of intoxicating liquor, a defendant need not have been in a totally stuperous condition, nor display any impairment of driving ability. See *State v. Engebretson,* 326 N.W.2d 212 (N.D.1982); *State v. Salhus, supra.* "The expression 'under the influence of intoxicating liquor' simply means having drunk enough to disturb the action of the physical or mental faculties so that they are no longer in their natural or normal condition...." *State v. Hanson, supra,* 73 N.W.2d at 139. Objective scientific tests are not necessary to support a conviction of driving while under the influence of intoxicating liquor. See *State v. Halvorson, supra; State v. Glavkee,* 138 N.W.2d 663 (N.D.1965); *State v. Hanson, supra.*

■ In the present case Officer Frederikson observed Kisse driving in an erratic manner, administered field sobriety tests, and observed that Kisse smelled of alcohol and had glassy eyes. In addition, Kisse told Officer Frederikson that he was driving home after having been at a bar. Even though Lieutenant Riesinger cannot provide any evidence of intoxication because he does not remember administering the test, we believe that there is sufficient evidence to sustain a conviction of driving while under the influence of intoxicating liquor. The prosecutor's task is more difficult without the test results in evidence, but it is not futile. See *State v. Frank, supra.*

The appeal is dismissed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.