2017 ND 117

**Ulises BARRIOS–FLORES, Appellant**

v.

**Grant LEVI, Director of the North Dakota Department of Transportation, Appellee**

**No. 20160103**

Supreme Court of North Dakota.

Filed 5/16/2017

Rehearing Denied 6/7/2017

Thomas F. Murtha IV, Dickinson, ND, for appellant.

Douglas B. Anderson, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for appellee.

Kapsner, Justice.

[¶ 1] Ulises Barrios–Flores appeals from a judgment affirming a Department of Transportation decision revoking his driving privileges for two years for refusing to submit to an onsite screening test of his breath. We conclude a law enforcement officer may request an onsite screening test of a driver's breath based on reasonable suspicion the driver was driving while impaired. We affirm.

I

[¶ 2] In June 2015, a law enforcement officer stopped a vehicle driven by Barrios–Flores for speeding. The officer testified at an administrative hearing that Barrios–Flores had watery bloodshot eyes, appeared confused, admitted consuming alcohol, and appeared to have difficulty maintaining a normal walk while exiting his vehicle. The officer testified that before asking Barrios–Flores to submit to a preliminary onsite screening test of his breath, the officer read Barrios–Flores the North Dakota implied consent advisory in English and also used a language interpretation service to recite the advisory to Barrios–Flores in Spanish. The advisory states that as a condition of operating a motor vehicle on a highway in North Dakota, a driver consents to taking a test to determine whether the motorist is under the influence of alcohol or drugs, that North Dakota law requires the driver to take a breath screening test and a chemical test to determine whether the driver is under the influence of alcohol or drugs, and that refusal to take the test as directed by a law enforcement officer is a crime punishable in the same manner as driving under the influence. The advisory also states that refusal to take the test as directed by a law enforcement officer may result in revocation of a driver's license. The officer testified that after reading Barrios–Flores the implied consent advisory, Barrios–Flores refused to take a preliminary onsite screening test of his breath. The officer testified he arrested Barrios–Flores, repeated the implied consent advisory, and asked him to submit to a warrantless breath test incident to the arrest. The officer testified Barrios–Flores did not respond and was deemed to have refused the request for a breath test incident to arrest.

[¶ 3] Barrios–Flores requested an administrative hearing to contest the Department's intention to revoke his driving privileges. After a hearing, a hearing officer found the arresting officer observed a speeding vehicle driven by Barrios–Flores and initiated a traffic stop. The hearing officer found Barrios–Flores had bloodshot watery eyes and admitted having a couple of beers. The hearing officer found the arresting officer read Barrios–Flores the implied consent advisory and Barrios–Flores refused to take the onsite screening test. The hearing officer concluded the arresting officer had reason to believe Barrios–Flores' vehicle was involved in a moving traffic violation, had reason to believe his body contained alcohol, and he refused the onsite screening test. The hearing officer revoked Barrios–Flores' driving privileges for two years for refusing the onsite

screening test. The hearing officer dismissed the Department's claim about Barrios–Flores' refusal to take a breath test incident to arrest, finding the arresting officer did not inform Barrios–Flores about the reason for the arrest as required by N.D.C.C. § 39–20–01. The district court affirmed the Department's decision.

## II

■ [¶ 4] Our review of the Department's administrative decision to suspend or revoke a driver's license is governed by N.D.C.C. ch. 28–32, the Administrative Agencies Practice Act. *Potratz v. N.D. Dep't of Transp.*, 2014 ND 48, ¶ 7, 843 N.W.2d 305. Under N.D.C.C. § 28–32–46, a court must affirm an agency's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 5] In *Potratz*, 2014 ND 48, ¶ 7, 843 N.W.2d 305 (quoting *Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 7, 839 N.W.2d 851), we described our deferential standard of review of an agency's findings of fact:

"The review is limited to the record before the administrative agency. We review the administrative hearing officer's decision and give deference to the administrative hearing officer's findings. We do not, however, make independent findings or substitute our judgment for that of the agency. Rather, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. We defer to the hearing officer's opportunity to judge the credibility of witnesses."

■ [¶ 6] " '[W]hether the facts meet the legal standard, rising to the level of probable cause or reasonable and articulable suspicion, is a question of law fully reviewable on appeal.' " *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶ 12, 682 N.W.2d 308 (quoting *Dettler v. Sprynczynatyk*, 2004 ND 54, ¶ 10, 676 N.W.2d 799).

## III

[¶ 7] In *Birchfield v. North Dakota*, —— U.S. ——, 136 S.Ct. 2160, 2172, 195 L.Ed.2d 560 (2016), the United States Supreme Court consolidated three implied-consent cases "to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream." *See State v. Birchfield*, 2015 ND 6, 858 N.W.2d 302; *Beylund v. Levi*, 2015 ND 18, 859 N.W.2d 403; and *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015). The United States Supreme Court differentiated between blood and breath tests and

held the Fourth Amendment permits warrantless breath tests incident to a lawful arrest for drunk driving, but does not permit warrantless blood tests incident to a lawful arrest for drunk driving. 136 S.Ct. at 2184–85. The Supreme Court concluded that in Danny Birchfield's criminal prosecution for refusing a warrantless blood test incident to his arrest, the refused blood test was not justified as a search incident to his arrest and reversed his conviction because he was threatened with an unlawful search. *Id.* at 2186. The Supreme Court concluded that in William Bernard's criminal prosecution for refusing a warrantless breath test incident to his arrest, he had no right to refuse the breath test because the test was a permissible search incident to his arrest and the Fourth Amendment did not require officers to obtain a warrant before demanding the breath test. *Id.*

[¶ 8] The Supreme Court also concluded that in an administrative proceeding to suspend Steven Beylund's license after he consented to a warrantless blood test incident to arrest, a remand to this Court for further proceedings was necessary to determine the voluntariness of Beylund's consent under the totality of the circumstances given the partial inaccuracy of the implied consent advisory.[1] *Birchfield*, 136 S.Ct. at 2186–87. The Supreme Court also said:

> If the court on remand finds that Beylund did not voluntarily consent, it will have to address whether the evidence obtained in the search must be suppressed when the search was carried out pursuant to a state statute, see *Heien v. North Carolina*, 574 U.S. ——, —— ——, 135 S.Ct. 530, 537–539, 190 L.Ed.2d 475 (2014), and the evidence is offered in an administrative rather than criminal proceeding, see *Pennsylvania Bd. of Probation and Parole v. Scott*,

524 U.S. 357, 363–364, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). And as Beylund notes, remedies may be available to him under state law. See Brief for Petitioner in No. 14–1507, pp. 13–14.

*Birchfield*, at 2186–87 n.9.

[¶ 9] On remand from the United States Supreme Court, we consolidated Beylund's appeal with another administrative license suspension case, and for purposes of those appeals only, we assumed the drivers' consent to the warrantless blood tests incident to arrest was involuntary and held the exclusionary rule does not require suppression of the results of the warrantless blood tests incident to arrest in the license suspension proceedings. *Beylund v. Levi*, 2017 ND 30, ¶¶ 1, 7, 12, 889 N.W.2d 907.

[¶ 10] *Birchfield* established that warrantless breath tests incident to a lawful arrest for drunk driving do not violate the Fourth Amendment, but absent another applicable exception to the warrant requirement, warrantless blood tests incident to a lawful arrest for drunk driving violate the Fourth Amendment. *Birchfield*, however, did not specifically address warrantless pre-arrest onsite screening tests of a driver's breath. Like *Beylund v. Levi*, this is an administrative license proceeding. Unlike the driver in *Beylund*, who submitted to a warrantless blood test incident to arrest, Barrios–Flores refused to submit to a warrantless pre-arrest onsite screening test of his breath and his license was revoked for that refusal.

 [¶ 11] Breath tests are searches under the Fourth Amendment. *Birchfield*, 136 S.Ct. at 2173. In the aftermath of *Birchfield*, the issue in this case requires analysis of a warrantless pre-arrest breath test in the context of an administrative license revocation proceeding. In a pre-

---

1. The officer's advisory in this case was given prior to *Birchfield v. North Dakota*.

*Birchfield* decision involving a criminal prosecution for refusing a preliminary on-site screening test of a driver's breath, this Court held language in N.D.C.C. § 39–20–14(1) requiring officers to have *reason to believe* a driver committed a moving traffic violation requires reasonable suspicion of driving under the influence of alcohol before a law enforcement officer may request a driver to submit to a preliminary onsite screening test of the driver's breath. *State v. Baxter*, 2015 ND 107, ¶¶ 6–12, 863 N.W.2d 208. On remand from the United States Supreme Court for further consideration in light of *Birchfield v. North Dakota*, we vacated our earlier decision in *Baxter*, 2015 ND 107, 863 N.W.2d 208, and remanded to the district court to develop the issue about pre-arrest breath tests, "[b]ecause Baxter's conviction involved refusal of a pre-arrest breath test, which was not analyzed within the holding in *Birchfield v. North Dakota*." *State v. Baxter*, 2016 ND 181, ¶ 5, 885 N.W.2d 64. We now consider that issue in the context of an administrative license revocation proceeding.

[¶ 12] Section 39–20–14(1), N.D.C.C., provides that a law enforcement officer may request a preliminary onsite screening test of an individual's breath when the officer "has reason to believe that the individual committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the individual's body contains alcohol." Section 39–20–04(1), N.D.C.C., provides that "[i]f a person refuses to submit to testing under section ... 39–20–14, none may be given." The results of a "screening test must be used only for determining whether or not a further test shall be given under the provisions of section 39–20–01." N.D.C.C. § 39–20–14(3).

[¶ 13] Under N.D.C.C. § 39–20–05(3), the limited scope of an administrative hearing for refusing to submit to an onsite screening test requires a determination of: (1) whether the law enforcement officer had reason to believe the person committed a moving traffic violation or was involved in an accident as a driver; (2) whether in conjunction with the violation or accident, the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol; and (3) whether the person refused to submit to the onsite screening test.

[¶ 14] In our pre-*Birchfield* case in *Baxter*, 2015 ND 107, ¶¶ 6–12, 863 N.W.2d 208, we considered the requirements for requesting a warrantless pre-arrest onsite screening test of a person's breath. We said the purpose of an onsite screening test was to insure that sufficient probable cause exists to warrant a subsequent arrest. *Id.* at ¶ 9. We recognized other courts had relied on the balancing test of *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to find "the level of intrusion occasioned by the administration of [preliminary breath] tests was 'outweighed by the strong law enforcement interest in attempting to keep a suspected drunk driver off the roads.'" *Baxter*, at ¶ 10 (quoting *State v. McGuigan*, 184 Vt. 441, 965 A.2d 511, 516–17 (2008)). We said probable cause was not required before an onsite screening test of an individual's breath may be requested by law enforcement officers, and we construed N.D.C.C. § 39–20–14(1) to require reasonable suspicion of driving under the influence before a law enforcement officer may request a driver to submit to an onsite screening test of the driver's breath. *Baxter*, at ¶ 10. We affirmed Baxter's criminal conviction for refusing a test, concluding:

Here, the record clearly establishes that the deputy had reasonable suspicion, if not probable cause, to believe Baxter was driving under the influence of alcohol. Because a limited *Terry* search based on reasonable suspicion is constitutionally permissible, *see, e.g., State v. Parizek*, 2004 ND 78, ¶ 17, 678 N.W.2d 154, the deputy's request that Baxter submit to an onsite screening test did not run afoul of the Fourth Amendment. Baxter was not forced to submit to the onsite screening test. Rather, he took advantage of the statutory right to refuse the test, and no test was given. As in *Beylund [v. Levi]*, 2015 ND 18, ¶ 24, 859 N.W.2d 403, and in *Birchfield*, 2015 ND 6, ¶ 15, 858 N.W.2d 302, Baxter points to nothing in the implied consent laws that would require him to submit to an onsite screening test in violation of the Fourth Amendment. Furthermore, the same reasonableness analysis we employed in *Beylund*, at ¶¶ 23–29, and *Birchfield*, at ¶ 5, is equally applicable to criminalizing the refusal to submit to an onsite screening test.

Based on our holdings in *Birchfield* and *Beylund*, we conclude Baxter's rights under the Fourth Amendment and N.D. Const. art. I, § 8, and the unconstitutional conditions doctrine, were not violated in this case.

*Baxter*, at ¶¶ 11–12.

[¶ 15] *Baxter* addressed a criminal conviction for refusing an onsite screening test. This case, however, deals with an administrative license revocation for refusing the test. In *Birchfield*, the United States Supreme Court differentiated between the intrusiveness of breath and blood tests, stating breath tests do not " 'implicat[e] significant privacy concerns.' " 136 S.Ct. at 2176, 2178 (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 626, 109 S.Ct. 1402, 103

L.Ed.2d 639 (1989)). First, the Supreme Court explained the "physical intrusion [of breath tests] is almost negligible" because they " 'do not require piercing the skin' and entail 'a minimum of inconvenience.' " *Birchfield*, at 2176 (quoting *Skinner*, 489 U.S. at 625, 109 S.Ct. 1402). Second, the Supreme Court said breath tests only reveal a person's blood-alcohol content and no sample remains for law enforcement to possess while blood samples can be stored and potentially reveal a wealth of additional highly personal information. *Birchfield*, at 2177. Finally, the Court said participation in breath tests is unlikely to enhance the embarrassment inherent in an arrest, and the act of blowing into a breathalyzer is not inherently embarrassing and normally takes place out of public view. *Id.*

[¶ 16] A warrantless pre-arrest onsite screening test of an individual's breath implicates a similar lack of intrusiveness as a breath test incident to an arrest and serves the purpose of providing additional evidence about impairment before necessitating or negating the need for a subsequent arrest. *See* N.D.C.C. § 39–20–14(3) (results of screening test may be used only for determining whether or not a further test shall be given). In *Birchfield v. North Dakota*, 136 S.Ct. at 2185, in the context of analyzing implied-consent laws under the consent exception to the warrant requirement, the Court said nothing in that case should be read to cast doubt on the "general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply" with those laws.

[¶ 17] We conclude *Birchfield v. North Dakota*, does not change our analysis in *Baxter* for pre-arrest onsite screening tests of an individual's breath for purposes of administrative license proceedings. We construe N.D.C.C. § 39–

20–14(1) to require reasonable suspicion of driving under the influence before a law enforcement officer may request a driver to submit to a pre-arrest warrantless onsite screening test of an individual's breath and a driver's license may be revoked for refusing a test based upon the officer's reasonable suspicion the person was driving under the influence. We conclude a pre-arrest warrantless onsite screening test of an individual's breath based on reasonable suspicion the individual was driving while impaired does not violate the Fourth Amendment or N.D. Const. art. I, § 8.

■ [¶ 18] Here, the hearing officer found the law enforcement officer observed a vehicle driven by Barrios–Flores was speeding and initiated a traffic stop, Barrios–Flores had bloodshot watery eyes, and he admitted he had a couple of beers. Evidence in the record supports the hearing officer's findings, and a reasoning mind could reasonably conclude the hearing officer's findings are supported by a preponderance of the evidence. Those findings provided the law enforcement officer with a reasonable suspicion Barrios–Flores was driving while impaired to request an onsite screening test of Barrios–Flores' breath and he refused the test. We therefore conclude the Department's decision revoking Barrios–Flores' driving privilege is in accordance with the law and did not violate his constitutional rights.

## IV

[¶ 19] We affirm the judgment affirming the Department's decision.

[¶ 20] Carol Ronning Kapsner

Lisa Fair McEvers

Gerald W. VandeWalle, C.J.

[¶ 21] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.

Sandstrom, Surrogate Judge, concurring specially.

[¶ 22] The majority and dissent ignore a rule of jurisprudence nearly as old as the republic to unnecessarily and inappropriately decide an unresolved constitutional issue. The United States Supreme Court traces to *Case of Hayburn*, 2 U.S. 2 Dall. 408, 1 L.Ed. 436 (1792), the rule that an unresolved constitutional issue is not to be unnecessarily decided. *Rescue Army v. Mun. Court of City of Los Angeles*, 331 U.S. 549, 568–69, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947).

[¶ 23] In *Birchfield v. North Dakota*, —— U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), the United States Supreme Court left unresolved the constitutional question of whether pre-arrest a driver can be legally required to take an onsite screening test on the basis of reasonable suspicion rather than the greater requirement of probable cause.

[¶ 24] The majority, on the basis of its constitutional interpretation, says, "We conclude a law enforcement officer may request an onsite screening test of a driver's breath based on reasonable suspicion the driver was driving while impaired." On the basis of a different constitutional interpretation, the dissent would "hold the onsite screening test cannot be demanded under N.D.C.C. § 39–20–14, absent probable cause or a DUI-related arrest."

[¶ 25] Whether facts rise to the level of probable cause is a question of law that we review de novo. *State v. Stewart*, 2006 ND 39, ¶ 6, 710 N.W.2d 403.

The existence of probable cause to arrest is a question of law. *See Mayo v. Moore*, 527 N.W.2d 257 (N.D. 1995);

*City of Langdon v. Delvo*, 390 N.W.2d 51 (N.D. 1986). Questions of law [are] fully reviewable on appeal. *State v. Zimmerman*, 529 N.W.2d 171 (N.D. 1995).

*Moran v. North Dakota Dep't of Transp.*, 543 N.W.2d 767, 769 (N.D. 1996).

[¶ 26] Not disputed by the dissent, the majority opinion says, at ¶ 2, "In June 2015, a law enforcement officer stopped a vehicle driven by Barrios–Flores for speeding. The officer testified at an administrative hearing that Barrios–Flores had watery bloodshot eyes, appeared confused, admitted consuming alcohol, and appeared to have difficulty maintaining a normal walk while exiting his vehicle." The foregoing facts establish probable cause for driving under the influence. *See Moran*, at 770. Indeed, they would be sufficient to sustain a criminal verdict of guilty of driving under the influence. *See, e.g., State v. Kisse*, 351 N.W.2d 97, 101 (N.D. 1984); *State v. Glavkee*, 138 N.W.2d 663, 667 (N.D. 1965); *State v. Hanson*, 73 N.W.2d 135, 140 (N.D. 1955).

[¶ 27] Because in this case there was probable cause, it is not necessary to answer the question of whether reasonable suspicion would have been sufficient.

[¶ 28] In *Rescue Army*, 331 U.S. at 569, 67 S.Ct. 1409, the United States Supreme Court explained:

[C]onstitutional issues affecting legislation will not be determined in friendly, nonadversary proceedings; in advance of the necessity of deciding them; in broader terms than are required by the precise facts to which the ruling is to be applied; if the record presents some other ground upon which the case may be disposed of; at the instance of one who fails to show that he is injured by the statute's operation, or who has availed himself of its benefits; or if a construc-

tion of the statute is fairly possible by which the question may be avoided.

[¶ 29] In *Interest of Goodwin*, 366 N.W.2d 809, 814 (N.D. 1985), this Court held:

Like the United States Supreme Court, we do not decide the issue presented. There are adequate grounds for reversing the commitment in this case, without addressing a fundamental constitutional issue. *It is a cardinal rule of decision making to avoid constitutional confrontations where there are appropriate alternative grounds to resolve the case before us. Mills v. Rogers*, 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982); *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *State v. King*, 355 N.W.2d 807, 809 (N.D.1984); *State ex rel. Stutsman v. Light*, 68 N.D. 513, 281 N.W. 777, 780 (1938) (*a constitutional question will be decided only when* it is properly before the court and *the question must be decided in order to resolve the controversy*).

(Emphasis added.)

[¶ 30] The United States Court of Appeals for the Eighth Circuit recently reiterated:

"A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988). "This rule must bind not only the courts, but also the administrative agencies which they review, for if it did not, such agencies, 'by unnecessarily deciding constitutional issues, would compel the courts to resolve such issues as well.'" *Gutierrez v. INS*, 745 F.2d 548, 550 (9th Cir. 1984) (Kennedy, J.) (quoting *Tung Chi Jen v. INS*, 566 F.2d 1095, 1096 (9th Cir. 1977)).

*Xiong v. Lynch*, 836 F.3d 948, 950 (8th Cir. 2016).

[¶ 31] The Eighth Circuit has explained the "foundational principle in our legal system," saying:

It is a foundational principle in our legal system, enunciated by Justice Brandeis in a familiar concurrence, that courts must make every effort to avoid deciding novel constitutional questions. *See Ashwander v. TVA*, 297 U.S. 288, 345–47, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). "It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905) (emphasis added). A corollary to Burton's cardinal rule is that if a case may be resolved on easy and settled constitutional grounds, the court should do so instead of deciding the case on difficult and novel constitutional grounds. *See, e.g., Ashwander*, 297 U.S. at 346, 56 S.Ct. 466 (Brandeis, J., concurring). "[C]ourts should think hard, and then think hard again, before turning small cases into large ones." *Camreta v. Greene*, 563 U.S. 692, 707, 131 S.Ct. 2020, 2032, 179 L.Ed.2d 1118 (2011). Rather than rushing to decide a difficult First Amendment question of first impression in this circuit, we begin with "the threshold jurisdictional question: whether" the consumers "ha[ve] standing to sue." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014).

[¶ 32] This Court's consistent jurisprudence reaches back a century:

It is requested that we first determine the constitutionality of the statute. A constitutional question does not arise merely because it is raised and a decision thereon sought. A party who assails the validity of a statute on constitutional grounds must show that he is prejudiced by the alleged unconstitutional provision, and that a decision on the constitutional question is necessary in order to protect him in the enjoyment of the rights guaranteed to him by the Constitution.

"Courts will not assume to pass upon constitutional questions unless properly before them, and the constitutionality of a statute will not be considered and determined by the courts as a hypothetical question. It is only when a decision on its validity is necessary to the determination of the cause that the same will be made, and not then at the instance of a stranger, but only on the complaint of those with the requisite interest. These principles have been recognized by the Supreme Court of the United States. That tribunal has announced that it rigidly adheres to the rule never to anticipate a question of constitutional law in advance of the necessity of deciding it, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, and never to consider the constitutionality of state legislation unless it is imperatively required." 6 R.C.L. § 74, pp. 76, 77.

*"And where a case may be decided on either one of two grounds, and one of these does not involve the constitutionality of a statute the court will decide it on that ground."* 6 R.C.L. § 75, p. 77. *Olson v. Ross*, 39 N.D. 372, 167 N.W. 385, 386 (1918) (emphasis added).

[¶ 33] This Court for more than one hundred years has reiterated the principle that courts do not decide unresolved constitutional issues if a case may be resolved on other grounds. For example: *Frokjer v.*

*North Dakota Bd. of Dental Examiners,* 2009 ND 79, ¶ 20, 764 N.W.2d 657 ("This Court will not consider or decide questions, particularly constitutional questions, that are not necessary to the determination of an appeal."); *State v. Friedt,* 2007 ND 108, ¶ 7, 735 N.W.2d 848 ("This Court will refrain from deciding constitutional questions if it can decide a dispute on other grounds."); *Billey v. North Dakota Stockmen's Ass'n,* 1998 ND 120, ¶ 23, 579 N.W.2d 171 (a court generally will not decide constitutional questions which are not necessary to its decision); *Glaspie v. Little,* 1997 ND 108, ¶ 15, 564 N.W.2d 651 ("We inquire into the constitutionality of a statute only to the extent required by the case before us."); *State v. Waters,* 542 N.W.2d 742, 745 (N.D. 1996) (refrain from deciding constitutional questions if they can decide a dispute on other grounds); *Little v. Graff,* 507 N.W.2d 55, 59 (N.D. 1993) ("Courts refrain from deciding constitutional questions if they can decide a dispute on other grounds."); *Minot Daily News v. Holum,* 380 N.W.2d 347, 350 (N.D. 1986) (we refrain from deciding constitutional issues where appropriate alternative grounds to resolve the issue exist); *Bismarck Pub. Sch. v. Walker,* 370 N.W.2d 565, 566 (N.D. 1985) ("It is a well-settled rule of decision making that a court will refrain from deciding constitutional issues where there are appropriate alternative grounds to resolve the case before it."); *Tooz v. State,* 76 N.D. 599, 38 N.W.2d 285, 287 Syll. 3 (1949) ("As a general rule a court will inquire into the constitutionality of a statute only to the extent required by the case before it and will not anticipate a question of constitutional law in advance of the necessity of deciding it, and will not formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."); *Goodman v. Christensen,* 71 N.D. 306, 300 N.W. 460, 467 (1941) ("A court will not assume to pass upon a constitutional question unless the question is properly before it and this does not occur unless the constitutional question must be decided in order to determine the controversy before the court."); *Reeves & Co. v. Russell,* 28 N.D. 265, 148 N.W. 654, 655 (1914) (the court will decline to pass upon the constitutionality of a statute when it is unnecessary to a decision).

[¶ 34] Courts do not unnecessarily decide unresolved constitutional issues even if, as is often the case, the parties would like the constitutional issue resolved, and no party raises the firmly established rule of jurisprudence to the contrary. In *Bulman v. Hulstrand Construction,* 503 N.W.2d 240 (N.D. 1993), the parties argued the continued viability of the doctrine of sovereign immunity, but the Court on its own declined to address the constitutional issue raised:

The possibility that a need for review might become moot by future developments in the trial court supports the normal postponement of review until the entire case is decided. *Peterson v. Zerr,* 443 N.W.2d 293 (N.D. 1989).

"Furthermore, it is well established that we will refrain from deciding constitutional issues ... unless required to do so by the case before us." *State v. Wilt,* 371 N.W.2d 159, 161 (N.D. 1985). Because of the possibility that trial of this case against the remaining defendant might make the constitutional issue raised in this appeal moot, we will refrain from deciding the constitutional issue presented.

*Bulman,* at 242. In *State v. King,* 355 N.W.2d 807, 809 (N.D. 1984), both parties wanted the constitutional questions answered, but this Court sent the case back saying, "The production of evidence will enable the parties as well as the county court to more precisely delineate the actu-

al issues involved and might obviate the necessity of ruling on a constitutional question."

[¶ 35] In *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C.*, 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984), the United States Supreme Court said, "It is a fundamental rule of judicial restraint, however, that this Court will not reach constitutional questions in advance of the necessity of deciding them." Seeking to avoid the necessity of deciding the constitutional question, the high court said, "The same prudential rule is properly employed in this case" and remanded the case to this Court for an additional determination. *Id.* at 158–59, 104 S.Ct. 2267. Further, in cases involving statutes and constitutionality, the doctrine of abstention absent necessity of deciding unresolved constitutional issues goes to the very heart of the constitutional system of separation of powers. *Rescue Army*, 331 U.S. at 568–72, 67 S.Ct. 1409. Parties may want courts to decide unresolved constitutional questions, but not doing so unnecessarily is a jurisprudential rule—like the requirements of jurisdiction and finality—which courts have a duty to apply regardless of whether they have been raised by a party. *See id.*

[¶ 36] In conclusion, this Court should not decide whether reasonable suspicion would have been sufficient to require Barrios–Flores to take the onsite screening test or face the consequences of refusal, because there was the probable cause which the United States Supreme Court has already said in *Birchfield* is sufficient. I would affirm.

[¶ 37] Dale V. Sandstrom, S.J.

Crothers, Justice, dissenting.

[¶ 38] The majority reaches a conclusion plausibly supported by breadcrumbs from the United States Supreme Court's cases regarding alcohol-impaired transportation operators. But, even if the majority opinion is plausible and understandable, I respectfully dissent because I think an incorrect conclusion has been reached.

[¶ 39] My view of the correct answer in this case has a simple but incomplete explanation, and a long, complex and somewhat meandering explanation. I will attempt to articulate both. What I will not articulate is the approach suggested by the special concurrence, which was neither briefed nor argued by the parties.

**The Short Answer**

[¶ 40] The short, albeit incomplete, answer is that the onsite screening is an unlawful search without a warrant or the application of a recognized warrant exception. The United States Supreme Court recently confirmed that "our cases establish that the taking of a blood sample or the administration of a breath test is a search." *Birchfield v. North Dakota*, —— U.S. ——, 136 S.Ct. 2160, 2173, 195 L.Ed.2d 560 (2016) (citing *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 616–617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) and *Schmerber v. California*, 384 U.S. 757, 767–768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). The Court in *Birchfield* also held "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." *Id.* at 2184. The Court specifically focused on searches incident to arrest and did not hold that warrantless breath tests could be constitutionally obtained under any other exception.

[¶ 41] For post-arrest chemical testing, North Dakota used the Intoxilyzer 8000 breath testing device during events pertinent to this case. *See* North Dakota Attorney General, Breath Alcohol Approved Chemical Testing Devices (July 1, 2014), *https://attorneygeneral.nd.gov/sites/ag/*

*files/documents/Crime–Lab1/2–BreathAlco holProgram/ApprovedDevices/2014/07–01–14.pdf*. By statute, the use of Intoxilyzer machines for blood-alcohol level analysis is limited to post-arrest searches. N.D.C.C. § 39–20–01(2) ("The test or tests must be administered at the direction of law enforcement officer only after placing the individual ... under arrest"). Of course, "[a]n arrest must be supported by probable cause." *City of Devils Lake v. Grove*, 2008 ND 155, ¶ 11, 755 N.W.2d 485.

[¶ 42] For pre-arrest onsite screening testing, North Dakota used the Intoxilyzer S–D5 and Alco–Sensor breath testing devices during events pertinent to this case. *See* North Dakota Attorney General, Approved Method for Operating the Intoxilyzer S–D5 (July 1, 2008), *https://atto rneygeneral.nd.gov/sites/ag/files/d ocuments/Crime–Lab1/2–BreathAlcohol Program/ApprovedMethods/IntoxS–D5/0 7–01–08.pdf* and Approved Method for Operating the Alco–Sensor FST (Oct. 1, 2012), *https://attorneygeneral.nd.gov/sites/ ag/files/documents/Crime–Lab1/2–Breath AlcoholProgram/ApprovedMethods/Alco– SensorFSTApprovedMethod/10–01–12.pdf*.

[¶ 43] Here, Barrios–Flores refused to take an onsite screening test which, like the Intoxilyzer, measures blood alcohol levels from a breath sample. *See* N.D.C.C. § 39–20–14(1). But unlike the Intoxilyzer, the onsite screening test is administered only before arrest and only to obtain probable cause to arrest or decide if additional tests should be requested. *Id.*; *Fossum v. N.D. Dept. of Transp.*, 2014 ND 47, ¶ 19, 843 N.W.2d 282 ("On-site screening tests are not admissible to establish blood alcohol content for purposes beyond probable cause to arrest and require further testing."). Also significant is that the onsite screening test can be administered by law enforcement on less than probable cause.

North Dakota law allows law enforcement to demand an onsite screening test if they have reason to believe the driver committed a traffic violation or had a vehicular accident, and the officer has formulated an opinion that the driver's body contains alcohol. Our cases describe this level of proof as reasonable suspicion. *State v. Baxter*, 2015 ND 107, ¶ 10, 863 N.W.2d 208. Of course, reasonable suspicion requires a lesser quantum of evidence than probable cause. We have explained the difference as follows:

"Probable cause to arrest is different from reasonable suspicion to stop. An officer has 'reasonable suspicion' to stop a motor vehicle if the officer can point to 'some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.' *Salter [v. North Dakota Dept. of Transp.]*, 505 N.W.2d [111] at 114 [N.D.1993]. Probable cause to arrest, however, requires more: it exists when 'the facts and circumstances within a police officer's knowledge and of which he had reasonable trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.' "

*Moran v. North Dakota Dept. of Transp.*, 543 N.W.2d 767, 770 (ND 1996).

[¶ 44] Under the United States Supreme Court analysis in *Birchfield*, I believe reasonable suspicion is an impermissibly low bar to conduct any warrantless search of a driver's breath. This conclusion is especially true since the virtually identical intrusion of a post-arrest Intoxilyzer test was justified in *Birchfield* as a search incident to arrest. As a result of *Birchfield*, I would overrule *State v. Baxter*, 2015 ND 107, 863 N.W.2d 208, *State v. Baxter*, 2016 ND 181, 885 N.W.2d 64, and hold the onsite screening test cannot be demanded under

N.D.C.C. § 39–20–14, absent probable cause or a DUI-related arrest.[2]

## The Long Answer

[¶ 45] The United States Supreme Court's holdings in DUI enforcement cases are inconsistent and unclear. Its decades of inconsistent legal theories and unclear direction have made state conformance with its constitutional rulings impossible. The pending case irrefutably makes my point.

[¶ 46] A few important concepts are clear and have been consistently applied. Courts long have recognized that a search occurs when the state administers blood or breath tests to determine blood alcohol concentrations. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) ("It could not reasonably be argued, and indeed respondent does not argue, that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. Such testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of that Amendment."). Also well established is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted).

[¶ 47] Examination of Supreme Court opinions from 1966 to 2016 shows that continuity of DUI cases largely ended with these bedrock pronouncements. Schmerber was arrested for driving under the influence. *Schmerber*, 384 U.S. at 758, 86 S.Ct. 1826. His blood was drawn at the direction of a police officer while at a hospital where Schmerber was being treated for injuries from an automobile accident. *Id.* One of the questions in *Schmerber* was whether a warrant was required to involuntarily draw and test blood from a seemingly intoxicated driver. *Id.* at 770–71, 86 S.Ct. 1826. In the *Schmerber* Court's words, "The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.' " 384 U.S. at 770, 86 S.Ct. 1826 (citation omitted). The *Schmerber* decision long was read as standing for the proposition that DUI blood and breath tests were exempt from the Fourth Amendment warrant requirement due to the exigency of alcohol being naturally eliminated from the body after a driver stopped drinking. *See State v. Morales*, 2015 ND 230, ¶ 12, 869 N.W.2d 417 (*Schmerber* permitted warrantless blood draw as justified by exigent circumstances). *Schmerber* also was read to permit law enforcement to involuntarily secure evidence of blood-alcohol content as a search incident to arrest. *See State v. Kimball*, 361 N.W.2d 601, 604 (N.D. 1985) ("A sample of Kimball's blood could properly be taken as a search incident to his arrest, notwithstanding his lack of consent or objection, if two conditions set forth in

---

2. I realize that requiring probable cause or a DUI arrest based on probable cause eliminates virtually all utility of the onsite screening test under N.D.C.C. § 39–20–14(1) as currently written. Whether the statute can be amended to permit admission of the onsite screening test obtained upon probable cause or incident to lawful arrest is a question for another day. I also acknowledge that the ruling I suggest effectively declares unconstitutional that part of N.D.C.C. § 39–20–14(1) permitting the onsite screening test based on reasonable suspicion. Article VI, section 4 of the North Dakota Constitution requires the agreement of at least four members of this Court to declare a statute unconstitutional.

Schmerber v. California, supra were met.").

[¶ 48] These readings of law enforcement's authority under Schmerber were not limited to state courts; the United States Supreme Court itself joined in the view. See South Dakota v. Neville, 459 U.S. 553, 559 and 563, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) ("Schmerber, then, clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood alcohol test" and "respondent concedes, as he must, that the state could legitimately compel the suspect, against his will, to accede to the [blood alcohol] test"); Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 625, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (in Schmerber "we held that a State could direct that a blood sample be withdrawn from a motorist suspected of driving while intoxicated, despite his refusal to consent to the intrusion."). Yet, without reversing or modifying its own interpretations of Schmerber, the United States Supreme Court retreated from the position (and chastised the Missouri courts for following their earlier descriptions of Schmerber's scope). See Missouri v. McNeely, —— U.S. ——, 133 S.Ct. 1552, 1568, 185 L.Ed.2d 696 (2013) ("Here and in its own courts the State based its case on an insistence that a driver who declines to submit to testing after being arrested for driving under the influence of alcohol is always subject to a nonconsensual blood test without any precondition for a warrant. That is incorrect."). McNeely will be considered more deeply below.

[¶ 49] After Schmerber, the United States Supreme Court held in Mackey v. Montrym, 443 U.S. 1, 18–19, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), that due process was not violated when a state enforced its implied consent law by summarily suspending a driver's license for refusal to take a breath analysis test. The Court reached its ruling after noting the state's "interest in public safety is substantially served by the summary suspension of those who refuse in several ways to take a breath-analysis test upon arrest." Id. at 18, 99 S.Ct. 2612. The Court further noted:

"A state plainly has the right to offer incentives for taking a test that provides the most reliable form of evidence of intoxication for use in subsequent proceedings. Indeed, in many cases, the test results could lead to prompt release of the driver with no charge being made on the 'drunken driving' issue. And, in exercising its police powers, the Commonwealth is not required by the Due Process Clause to adopt an 'all or nothing' approach to the acute safety hazards posed by drunken drivers."

Id. at 19, 99 S.Ct. 2612. The Court concluded, "the compelling interest in highway safety justifies [Massachusetts] in making a summary suspension effective pending the outcome of the prompt postsuspension hearing available." Id.

[¶ 50] In South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Court heard a challenge to the evidentiary use of a driver's refusal to take a blood-alcohol test for which he had impliedly consented. Id. at 554, 103 S.Ct. 916. The Neville case involved a driver claiming both Fifth Amendment self-incrimination and Fourteenth Amendment due process violations.

[¶ 51] The Fifth Amendment question was whether admission of a driver's refusal to submit to the blood-alcohol test violated his privilege against self-incrimination. The Court held that the privilege was not violated, reasoning "the values behind the Fifth Amendment are not hindered when the state offers a suspect the choice of submitting to the blood-alcohol test or having his refusal used against him." Id. at

563, 103 S.Ct. 916. As justification for the holding, the Court recognized that states were combating the "carnage caused by drunk drivers" by enacting implied consent laws for chemical testing. *Id.* at 558, 103 S.Ct. 916. The Court recognized that part of the states' arsenal being used to stop drinkers from driving was enactment of implied consent laws declaring that by operating a vehicle drivers have "deemed to have consented to a chemical test of the alcoholic content of his blood if arrested for driving while intoxicated." *Id.* at 559, 103 S.Ct. 916.

[¶ 52] The driver in *Neville* also claimed his Fourteenth Amendment due process rights were violated by admission into evidence of his refusal to take the blood-alcohol test because he was not warned of the consequences of refusal. *Id.* at 564–65, 103 S.Ct. 916. Relying on its then-current reading of *Schmerber* that "the state could legitimately compel the suspect, against his will, to accede to the test." *Id.* at 563, 103 S.Ct. 916. The Court held that a South Dakota driver's "right to refuse the blood-alcohol test, by contrast, is simply a matter of grace bestowed by the South Dakota legislature." *Id.* at 565, 103 S.Ct. 916. As a result, the Court held it was not "fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt, even though respondent was not specifically warned that his refusal could be used against him at trial." *Id.*

[¶ 53] In another 1983 decision the United States Supreme Court upheld Illinois' implied consent law procedure for drivers license suspensions. *Illinois v. Batchelder*, 463 U.S. 1112, 103 S.Ct. 3513, 77 L.Ed.2d 1267 (1983). The Court held, "the Constitution does not require arresting officers in Illinois, in enforcing that state's implied consent statute, to recite in an affidavit the specific and concrete evidentiary matters constituting 'the underlying circumstances which provided him with a reasonable belief that the arrested person was driving under the influence of intoxicating liquor.' " *Id.* at 1119, 103 S.Ct. 3513 (citation omitted). Reaching this conclusion, the Court cited *Neville* and *Mackey* regarding the state's interest in using implied consent and drivers license revocation as a means of reducing "carnage" caused by intoxicated drivers. *Id.* at 1118, 103 S.Ct. 3513.

[¶ 54] In 1987 the Court held that chemical testing of railroad operators presented a "special need" allowing warrantless chemical testing for alcohol outside of the normal Fourth Amendment requirement. *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 620, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). The Court previously recognized a Fourth Amendment exception based on the special needs in probation searches, searches of highly-regulated businesses, work-related searches of employees' desks and offices, search of student property by school officials and searches of prison inmates. *Id.* at 619–20, 109 S.Ct. 1402.

[¶ 55] The laws challenged in *Skinner* were federal regulations rather than state implied consent laws for motorists. In *Skinner* the regulations required blood and urine testing of railroad crew members after most injury or property damage incidents, and permitted crew breath and urine testing when railroads suspected an employee was impaired. *Id.* at 609–611, 109 S.Ct. 1402. Despite the difference in legal origin, the Court reaffirmed "that the collection and subsequent analysis of the requisite biological samples must be deemed Fourth Amendment searches." *Id.* at 618, 109 S.Ct. 1402. The Court noted, "[t]he Government's interest in regulating the conduct of railroad employees to ensure safety ... presents 'special needs' beyond normal law enforcement that may justify

departures from the usual warrant and probable-cause requirements." *Id.* at 620, 109 S.Ct. 1402 (citation and quotation marks omitted).

[¶ 56] The Court in *Skinner* next examined "whether the Government's need to monitor compliance with these restrictions justifies the privacy intrusions at issue absent a warrant or individualized suspicion." *Id.* at 621, 109 S.Ct. 1402. The Court answered the question in the shadow of *Schmerber*, stating "alcohol and other drugs are eliminated from the bloodstream at a constant rate ... and blood and breath samples taken to measure whether these substances were in the bloodstream when a triggering event occurred must be obtained as soon as possible." *Id.* at 623, 109 S.Ct. 1402. From this, the Court concluded:

> "In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion. We believe this is true of the intrusions in question here."

*Id.* at 624, 109 S.Ct. 1402. The Court concluded by stating "that the compelling Government interests served by the FRA's regulations would be significantly hindered if railroads were required to point to specific facts giving rise to a reasonable suspicion of impairment before testing a given employee." *Id.* at 633, 109 S.Ct. 1402.

[¶ 57] This history shows the Court was actively deciding blood alcohol testing and implied consent cases between *Schmerber* in 1966 and *Skinner* in 1989. Then all was quiet in this field at the United States Supreme Court until 2013. Since 2013, the Court generally has focused on the traditional Fourth Amendment balancing test in DUI and implied consent cases. Although language in several opinions appear to hint the Court was considering expanding *Skinner* to exempt DUI blood-alcohol testing under the special needs exception to the warrant requirement, none have done so. Instead, the Court has parsed both the implied consent laws and the various chemical tests used to measure blood-alcohol levels to recognize differing Fourth Amendment protections based on differing privacy expectations.

[¶ 58] Starting in 2013 the Court signaled a departure from the common interpretation of *Schmerber* and ignited the current round of litigation in DUI cases. In *Missouri v. McNeely*, — U.S. —, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), the Court explained the issue as follows:

> "The question presented here is whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases."

*Id.* at 1556. The Court answered the question by rejecting a categorical conclusion that the natural dissipation of alcohol in human blood presented an exigent circumstance allowing warrantless blood testing of DUI suspects. *Id.*

[¶ 59] The Justices in *McNeely* also touched on the role of implied consent laws in fighting driving while intoxicated matters. Justice Sotomayor wrote for herself and three others as follows:

> "As an initial matter, States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to

BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense."

*Id.* at 1566. Justice Kennedy did not join this portion of Justice Sotomayor's opinion so it was not part of the plurality writing that became the Court's opinion. *Id.* at 1568. The plurality in *McNeely* did not further discuss the perceived role of implied consent laws or opine whether a motor vehicle operator's implied consent permitted warrantless chemical testing of blood alcohol levels.

[¶ 60] The *Birchfield, Beylund* and *Bernard* cases from North Dakota and Minnesota were the latest in the United States Supreme Court's foray into this quagmire. *Birchfield v. North Dakota,* ⸺ U.S. ⸺, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). Substantively, the Court held "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." *Id.* at 2185. Because the Court found warrantless blood tests constitutionally impermissible searches, the Court examined implied consent, stating "we must address respondents' alternative argument that such tests are justified based on the driver's legally implied consent to submit to them." *Id.*

[¶ 61] The Court first noted:

"Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. *See, e.g., McNeely, supra,* at ⸺, 133 S.Ct. at 1565–1566 (plurality opinion); *Neville, supra,* at 560, 103 S.Ct. 916."

*Id.* However, as noted above, the portion of *McNeely* cited by the *Birchfield* majority was not part of the plurality opinion. Part III of Justice Sotomayor's opinion was joined by Justices Scalia, Ginsburg and Kagan. *McNeely,* 133 S.Ct. at 1556. While Justice Kennedy joined the other portions of the opinion, he did not join Part III. *Id.* at 1568.

[¶ 62] The *Birchfield* majority continued by stating, "Petitioners do not question the constitutionality of [implied consent] laws, and nothing we say here should be read to cast doubt on them." 136 S.Ct. at 2185. The Court also stated, "It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* Clearly, these two positions conflict. Regarding blood tests, the *Birchfield* Court did more than "cast doubt" on implied consent. The Court held implied consent was constitutionally ineffective.

[¶ 63] But the Court was far less clear about the utility of implied consent for breath tests. Because the Court in *Birchfield* held that breath testing was constitutionally permissible as a search incident to arrest, it did not decide the constitutionality of criminalizing the refusal to take a pre-arrest onsite screening test or a post-arrest breath test. *See* N.D.C.C. § 39–20–14 and 39–20–01 respectively.

[¶ 64] Here, the majority acknowledges these holdings in *Birchfield* and concludes the pre-arrest onsite screening test can be demanded by the state on penalty of loss of driving privileges based on no more than reasonable suspicion. *Majority opinion* ¶ 17. Doing so, the majority pins its holding on this Court's pre-*Birchfield* holding in *State v. Baxter,* 2015 ND 107, ¶ 16, 863 N.W.2d 208. Majority opinion ¶ 17. ("We conclude *Birchfield v. North Dakota,* does not change our analysis in *Baxter* for pre-arrest onsite screening tests of an individual's breath for purposes of administrative license proceedings."). The majority goes on to hold, "a pre-

arrest warrantless onsite screening test of an individual's breath based on reasonable suspicion the individual was driving while impaired does not violate the Fourth Amendment or N.D. Const. art. I, § 8." *Id.*

[¶ 65] I do not agree with the majority that we should parse the constitutionality of demanding an onsite screening test based on whether the case will become a criminal proceeding or an administrative license proceeding. I do agree the remedies available for an unconstitutional search differs in each proceeding because the exclusionary rule applies to the criminal proceeding, *State v. Birchfield*, 2016 ND 182, ¶ 3, 885 N.W.2d 62, but exclusion does not apply to administrative proceedings. *Beylund v. Levi*, 2017 ND 30, ¶ 28, 889 N.W.2d 907. However, that the exclusionary rule is not an available remedy for an unconstitutional search should not be the guiding principle upon which we decide whether the search is constitutional in the first instance. More importantly, when law enforcement requests that a driver perform the pre-arrest onsite screening test, a driver simultaneously is subject to the administrative loss of driving privileges, and to criminal prosecution for refusing to take the breath test and for driving under the influence. *See* N.D.C.C. §§ 39–20–14 and 39–20–01. Therefore, the constitutionality of requiring an onsite screening test based solely on implied consent should be examined under traditional Fourth Amendment analysis, rather than the type of proceeding in which the fruits of the search might be used. *See Birchfield*, 136 S.Ct. at 2173.

[¶ 66] Traditional Fourth Amendment reasonableness analysis "assess[es], on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 2484, 189 L.Ed.2d 430 (2014) (citation omitted). The onsite screening and the Intoxilyzer tests operate similarly by determining blood alcohol levels from a driver's breath sample. The Supreme Court concluded the Intoxilyzer "breath test does not 'implicat[e] significant privacy concerns.'" *Birchfield*, 136 S.Ct. at 2178 (citation omitted). The Court in *Birchfield* also concluded the governmental interest in curbing drunk driving is high, and "requiring the police to obtain a warrant in every case would impose a substantial burden but no commensurate benefit." *Id.* at 2181–82.

[¶ 67] From this analysis the United States Supreme Court did not conclude breath tests were free from Fourth Amendment constraints. Rather, the Court concluded that the Fourth Amendment balance of privacy and governmental need could be struck by treating the warrantless search as reasonable when performed incident to arrest.

[¶ 68] From the *Birchfield* Court's holding and reasoning, no apparent reason exists to conclude the onsite screening test and the Intoxilyzer chemical test can, or should be, subject to different constitutional analysis. Arrests must be made on no less than probable cause. Subjecting the two breath tests to the same analysis requires that both would be unreasonable searches unless supported by probable cause or performed incident to arrest. Because the majority fails to reach this conclusion, and instead permits the state to demand an onsite screening test on no more than reasonable suspicion, I respectfully dissent.

[¶ 69] Daniel J. Crothers